996 F.2d 702
 25 Fed.R.Serv.3d 1208
 KOLLSMAN, A DIVISION OF SEQUA CORPORATION, Plaintiff-Appellant,
v.
Victor D. COHEN, Defendant-Appellee,
and
CUBIC CORPORATION; Cubic Defense Systems, Incorporated, Defendants,
and
Applied Data Technology, Incorporated, Third Party Defendant.
 No. 92-2359.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1993.
Decided June 18, 1993.
 
 Charles Torrence Armstrong, McGuire, Woods, Battle & Boothe, Alexandria, VA, argued (Tobin D. Kern, McGuire, Woods, Battle & Boothe, on the brief), for plaintiff-appellant.
 David Rosenblum, Rosenblum & Rosenblum, P.C., Alexandria, VA, for defendant-appellee.
 Before HALL and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 Kollsman, a division of Sequa Corporation, appeals the order of the district court requiring it to pay the fees and expenses of an attorney/guardian ad litem appointed by the district court to act on behalf of Victor Cohen--one of the defendants in the underlying action. Kollsman settled its claims against Cohen's codefendants, Cubic Corporation and Cubic Defense Systems Incorporated, (collectively "Cubic") and following this settlement Kollsman agreed to a dismissal of its claims, with prejudice, against Cohen. The only issue on appeal is whether or not the costs and fees of Cohen's guardian ad litem, including legal expenses, may be assessed against Kollsman. Because the attorney's fees of counsel acting in the dual role of attorney and guardian ad litem may not be charged against an opposing party, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.
 
 
 2
 * On December 27, 1991, Kollsman, a defense contractor and competitor of Cubic filed a civil action seeking damages from Cubic and Cohen based on their conspiracy to rig bidding on Department of Defense contracts, Cohen--a former Deputy Assistant Secretary of the United States Air Force--along with a subsidiary of Cubic each previously pled guilty to criminal charges resulting from the government's investigation of Cubic and Cohen's contract procurement practices--part of the "Ill Wind" investigation.[1]
 
 
 3
 Cohen was served with Kollsman's complaint at his home in Maryland on January 6, 1992. On January 16, 1993, Cohen began serving the prison sentence imposed on him as a result of his guilty plea. On February 4, 1992, Cohen sent a letter to the district court in which he requested that, in light of his incarceration, the civil proceedings be deferred, he be appointed counsel, or he be allowed access to a law library. On March 20, 1992, during a hearing on Kollsman's motion to dismiss, the district court raised sua sponte the matter of appointing a guardian ad litem for Cohen. The district court felt Virginia law required the appointment of a guardian ad litem for incarcerated defendants. Counsel for Kollsman agreed an appointment would be prudent, however, there was no discussion by the parties or the district court as to how the guardian ad litem was to be paid. Shortly thereafter, the district court entered an order appointing David Rosenblum, Esquire as guardian ad litem for Cohen. The order went on to state it was based on Virginia Code § 8.01-297 and Kollsman would be required to pay the costs and fees of the guardian ad litem. Kollsman quickly moved for reconsideration of that part of the order requiring it to pay the cost and fees of the guardian ad litem and the district court heard argument on the motion at a hearing on April 10, 1992. Counsel for Kollsman made clear it did not object to the appointment of the guardian ad litem, but it objected to imposition of any attorney's fees on Kollsman. Counsel for Kollsman opined that Cohen was not indigent and he should pay his own attorney's fees. The district court modified its order, stating it would wait until the end of the case to determine who would pay the fees and expenses of the guardian ad litem.
 
 
 4
 On June 26, 1992, Kollsman reached a settlement with Cubic, after which Kollsman voluntarily dismissed its complaint against all defendants, including Cohen. On July 9, 1992, Cohen filed a motion for payment of guardian ad litem fees, requesting the district court to order payment of fees and expenses approximating $50,000 for the services of the guardian ad litem.
 
 
 5
 On July 17, 1992, the district court held a hearing on the motion. Counsel for Kollsman reiterated that it objected to paying any attorney's fees for Cohen and that "each party should bear his or its own costs." (J.A. 19).
 
 
 6
 The district court issued an order on August 26, 1992, 800 F.Supp. 1381, requiring Kollsman to pay the fees and expenses of Cohen's guardian ad litem. The district court determined its jurisdiction was based on diversity and that Virginia law governed and required a guardian ad litem to be appointed for incarcerated individuals named in a civil suit. Citing Virginia lower court cases, the district court noted that a guardian ad litem 's fee was imposed against a successful plaintiff and, under the reasoning of these cases, the district court felt Kollsman could be required to pay the guardian ad litem fees incurred on behalf of Cohen.
 
 II
 
 7
 Initially, it must be recognized, and Cohen concedes, the district court erred in characterizing its jurisdiction as based on diversity. Both Kollsman and Cubic are Delaware corporations and are, therefore, citizens of the same state for diversity purposes. Jurisdiction was based on a federal question, i.e., violation of the Robinson-Patman and Sherman Acts. The district court thus erred in applying Virginia law with respect to the appointment and payment of a guardian ad litem.[2] The district court should have instead referred to Fed.R.Civ.P. 17(b) and (c):
 
 
 8
 (b) Capacity to Sue or be Sued.
 
 
 9
 The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile.
 
 
 10
 (c) Infants or Incompetent Persons.
 
 
 11
 Whenever an infant or incompetent person has a representative such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person.... The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make other order as it deems proper for the protection of the infant or incompetent person.
 
 
 12
 At the time of service of process, which was before his incarceration, Cohen's domicile was in Rockville, Maryland. This being the case, Rule 17 requires reference to Maryland law to determine his competency. Maryland Code Ann. § 13-201 provides that disabled persons include persons under "imprisonment" because they are "unable to manage [their] property and affairs effectively...." Kollsman concedes the appointment of a guardian ad litem under Rule 17 was within the discretion of the district court.
 
 
 13
 Kollsman argues the "American Rule," which requires each party to litigation to bear the cost of his own attorney's fees, precludes Cohen from recovering the fees of his guardian ad litem because they were, in truth, attorney's fees. See 6 Jeremy C. Moore et al., Moore's Federal Practice, p 54.78(1), at 54-489 (3d ed. 1987). The American Rule, however, does not abrogate the authority of a district court, under Rule 54(d), to assess the costs of a prevailing party against the nonprevailing party and the fees and costs of a guardian ad litem clearly may be taxed as costs under Rule 54. See, e.g., duPont v. Southern National Bank of Houston, 771 F.2d 874 (5th Cir.1985) (Guardian ad litem fees may be taxed as costs.); Friends for All Children v. Lockheed Aircraft, 725 F.2d 1392 (D.C.Cir.1984) (same); Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1570 p. 506 (1990); Moore's Federal Practice, p 17.26 p. 17-219.
 
 
 14
 Kollsman argues that although certain guardian ad litem fees and costs may be taxed under Rule 54, they cannot be taxed against it because Kollsman is a prevailing party. Although Kollsman was a prevailing party with respect to Cubic, it was not a prevailing party with respect to Cohen. A dismissal of an action, whether on the merits or not, generally means the defendant is the prevailing party. Sapp v. Renfroe, 511 F.2d 172 (5th Cir.1975) (holding that even a complaint brought in good faith is not a ground for denying costs to a defendant put to the expense and inconvenience equal to that of the other defendants up to point of plaintiff's consent to the dismissal of defendant); Corcoran v. Columbia Broadcasting, 121 F.2d 575 (9th Cir.1941) (holding that when a defendant has been put to the expense of making an appearance and obtaining an order for clarification of the complaint and the plaintiff then voluntarily dismisses without amending his pleading, the party sued is the prevailing party); Sheets v. Yamaha Motors, 891 F.2d 533, 539 (5th Cir.1990) (same). Thus, as between Kollsman and Cohen, Cohen is a prevailing party and is eligible to recover his costs.
 
 
 15
 We agree with Kollsman, however, that even if a guardian ad litem 's fees and expenses may be taxed as costs under Rule 54(d), those costs and fees may not include services the guardian ad litem performs as attorney to the incompetent.
 
 
 16
 There is a distinction between an attorney ad litem and a guardian ad litem even though, as in this case, the same person performs in both roles. It is well recognized that the guardian ad litem serves essentially as an officer of the court. Hull by Hull v. United States, 971 F.2d 1499, 1510 (10th Cir.1992); duPont v. Southern Nat. Bank of Houston, 771 F.2d 874, 882 (5th Cir.1985); Schneider v. Lockheed Aircraft Corp., 658 F.2d 835, 854 (D.C.Cir.1981); Franz v. Buder, 38 F.2d 605, 606 (8th Cir.1930). He is there not only to manage the litigation for the incompetent but also to assist the court in performing its duty to jealously protect the incompetent's interests. As such, the guardian ad litem 's costs and expenses are appropriately chargeable under Fed.R.Civ.P. 54. An attorney ad litem, in contrast, provides the ordinary services of an attorney.
 
 
 17
 The guardian ad litem 's presence is necessitated by the litigation and it is his duty to determine policy regarding litigation. The guardian ad litem is frequently not an attorney and if legal services are required, he must seek and employ counsel. Counsel obtained thereby on behalf of a ward or incompetent is in no different circumstance from counsel for any other litigant. See Hull by Hull, 971 F.2d at 1511; duPont, 771 F.2d at 882; Schneider, 658 F.2d at 854-55; Franz, 38 F.2d at 606. An attorney who serves as both legal counsel and guardian ad litem does not thereby acquire any greater right to recover his fees than have his brethren who are hired directly by a litigant. Id.[3]
 
 
 18
 Cohen argues the district court nevertheless had the equitable power to impose attorney's fees against Kollsman. In exceptional cases, and for dominating reasons of justice, attorney's fees may occasionally be recovered against an opposing party. Alyeska Pipeline Service Company v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Wright and Miller, Federal Practice and Procedure, § 2675 p. 263 (1983). This power of the district court is generally thought to be within the court's equitable power. The Supreme Court decision in Alyeska, however, sharply curtails a federal court's equitable power to award fees in the absence of a statute expressly providing for such an award. In Alyeska, the Court held "unless Congress has indicated in a statute that counsel fees should be awarded to help implement public policy, the federal courts are powerless to act beyond the small amounts authorized by § 1923 of Title 28." 421 U.S. at 249, 95 S.Ct. at 1617-18.[4]
 
 
 19
 Cohen also asserts that Kollsman waived any objection to be taxed for costs and fees of the guardian ad litem because part of its settlement agreement with Cubic was that Kollsman would not argue Cubic should pay these fees and costs. This is, however, plainly not a concession that Kollsman itself would pay the costs and fees of Cohen. Cohen further argues Kollsman did not make clear to the district court that the fees of counsel acting in the dual capacity of attorney and guardian ad litem should be separated. Because Kollsman never argued this, Cohen asserts, the issue is not preserved for appeal. Cohen's position is untenable. When the district court first raised the issue pretrial, it made no mention of who would pay the fees of the guardian ad litem. The first indication Kollsman would be held responsible was the district court's March 20, 1992 order. Kollsman promptly moved for reconsideration of that order arguing "the normal provisions of when a winner ... may recover his fees is the only basis for a court ruling on the payment of attorney's fees." (J.A. 9). The district court modified the order and delayed the decision on the award of fees until the end of the case. After settlement of the case, when Kollsman learned the district court was assessing Cohen's attorney's fees against it, Kollsman again objected stating "federal law does not authorize the payment of Cohen's attorney's fees" and "no federal statute or rule authorizes assessing ... attorney's fees against a plaintiff such as Kollsman." (Kollsman's Memorandum of Law in Opposition to Motion to Payment of Fees, page 7-8.). Kollsman's objections make clear that, although it did not object to Cohen having a guardian ad litem, it was resolute and clear in its assertions that Cohen's legal expenses could not be assessed against it. In short, although counsel for Kollsman could have been more helpful to the district court by citing relevant authority such as Hull by Hull and duPont, it objected to the imposition of legal fees against it at the first opportunity. Kollsman based its objection on the general proposition that Cohen's expenses were attorney's fees and "federal law does not authorize the payment of Cohen's attorney's fees." (Id. at 7). More specifically, Kollsman asserted the American Rule controlled, requiring each party bear its own costs. (Id. at 4). To preserve an issue for appeal, an objection must be timely and state the grounds on which it is based. Fed.R.Civ.P. 46; see Pogue v. Retail Credit Co., 453 F.2d 336 (4th Cir.1972); Honea v. West Virginia Pulp & Paper Co., 380 F.2d 704 (4th Cir.1967); Watkins v. Grover, 508 F.2d 920 (9th Cir.1974). Kollsman's objections satisfy both requirements. It is precisely on the general ground which Kollsman raised--the American Rule requiring each party to bear its own attorney's fees--that the district court erred and on which reversal is required.
 
 
 20
 The decision of the district court is, therefore, reversed. Because counsel for Cohen acted as both attorney and as guardian ad litem, remand is necessary for the district court to consider what costs are attributable to his separate role as guardian ad litem. These costs, as discussed above, may be charged against Kollsman.
 
 REVERSED AND REMANDED
 
 
 [1]
 "Operation Ill Wind" was the code name for an investigation, undertaken by the Naval Investigative Service and the Federal Bureau of Investigation, of contract procurement fraud within the Department of Defense. The investigation uncovered numerous instances of fraudulent collusion between Department of Defense officials, civilian defense consultants and defense contractors with regard to the bidding for and obtaining Department of Defense contracts
 
 
 [2]
 If this case were based on diversity jurisdiction, the district court could have followed the policy of a state statute of the state in which it sat in apportioning the guardian ad litem fees and costs
 
 
 [3]
 Cohen correctly points out that a district court may assess attorney's fees against the assets of the minor or incompetent which that attorney preserves or against an award the attorney obtains. See, e.g., Folsom v. McDonald, 237 F.2d 380, 381-82 (4th Cir.1956) (The district court has authority to award attorneys' fees from recovery obtained by them for infants.). This authority of the district court is both well-established and quite irrelevant to his case. As we said in Folsom, in making such an award, the district court is "merely determining the rights as between the infant plaintiff and her attorneys...." 237 F.2d at 382 (emphasis added). It is quite a different matter to impose the attorney's fees of one party against another party
 
 
 [4]
 The Court recognized in Alyeska, however, two long-standing exceptions: (1) the allowance of fees because of the bad faith of the opposing party in bringing, defending, or continuing the litigation; and (2) the "common fund doctrine" which is applicable when an attorney acts to preserve or obtain a benefit for a plaintiff. See Lytle v. Commissioners of Union County, 541 F.2d 421 (4th Cir.), cert. denied, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). Neither exception is applicable to this case